**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE** | : | |
| | : | **Chapter 13** |
| **DEBORAH MARIE COLLINS,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JASON ROBERTS COLLINS,** | : | |
| | : | **Bankruptcy No.: 19-14224-AMC** |
| | : | |
| **DEBTORS** | : | |
| | : | |

Ashely M. Chan, United States Bankruptcy Judge

**OPINION**

## I. INTRODUCTION

In April 2019, an arbitration award in the amount of $50,000 was entered against Deborah Marie Collins ("Ms. Collins"), a co-debtor in this chapter 7 bankruptcy case, in favor of her sister, Jennifer Menges ("Menges"), in connection with a civil action in the Court of Common Pleas of Montgomery County, Pennsylvania ("CCP") against Ms. Collins for assault and battery. Menges subsequently obtained a judgment lien against real property located at 18 Roboda Blvd., Royersford, Pennsylvania ("Property"), which Ms. Collins and her husband, Jason Robert Collins ("Mr. Collins," collectively with Ms. Collins, "Debtors") reside in and which is co-owned by Ms. Collins and Menges.

After the Debtors commenced this bankruptcy case, Menges filed a motion for relief from the automatic stay seeking, *inter alia*, to determine the Property's value. The Court held an evidentiary hearing to determine the value of the Property and, based largely upon the appraisal submitted by Menges and the credible testimony of her appraiser, concludes that the current fair market value of the Property is $205,000.

## II. FACTUAL AND PROCEDURAL BACKGROUND

By way of background, on September 16, 2016, Margaret Zordan ("Zordan"), Ms. Collins' mother, purchased the Property for $184,000. Case No. 19-14224-amc ECF No. ("ECF") 69 First Mot. Relief Stay Ex. A. Title to the Property was held by Zordan and Ms. Collins as joint tenants with right of survivorship. Case No. 19-14224-amc ECF 152 Second Mot. Relief Stay ¶ 4; ECF 69 First Mot. Relief Stay ¶ 4, Ex. A. On July 12, 2017, Zordan conveyed her own one-half interest in the Property to Menges, her other daughter. Case No. 19-14224-amc ECF 152 Second Mot. Relief Stay ¶ 5; Case No. 19-14224-amc ECF 69 First Mot. Relief Stay ¶ 5, Ex. B. The Property, which is situated in the Roboda Boulevard development, a townhouse community of attached dwellings in Upper Providence Township, Montgomery County, Pennsylvania ("Roboda Development"), is the Debtors' primary residence. Case No. 19-14224-amc ECF 1; ECF 223. Virtually all units in the Roboda Development are the same size and shape. *Id.* at ECF 223.

### A. Civil Action

On November 15, 2017, Menges filed a complaint in the CCP for assault and battery against Ms. Collins ("Civil Action") in connection with a physical altercation that occurred between Menges and Ms. Collins on September 30, 2017. Civ. No. 26936, November Term, 2017. On January 17, 2018, the CCP entered a default judgment ("Civil Action Default Judgment") in favor of Menges and against Ms. Collins. *Id.* at Doc. No. 11608772. On February 7, 2018, Ms. Collins filed a motion to open the Civil Action Default Judgment. *Id.* at Doc. No. 11646179.

On October 5, 2018, the CCP denied Ms. Collins' motion to open the Civil Action Default Judgment. Civ. No. 26936, November Term, 2017 Doc. No. 11989836; Case No. 19-

14224-amc ECF 66 Ex. C. Consequently, on April 3, 2019, an arbitration hearing was held, and damages were assessed in favor of Menges and against Ms. Collins in the amount of $50,000. Civ. No. 26936, November Term, 2017 Doc. No. 12249027.

**B. Partition Action**

On September 25, 2017, Menges separately filed a complaint in partition ("Partition Action") against Ms. Collins in the CCP. Civ. No. 23241, September Term, 2017 (hereinafter referred to as "Partition Action"); Case No. 19-14224-amc ECF 152 Second Mot. Relief Stay ¶ 12; ECF 69 First Mot. Relief Stay ¶ 12, Ex. C. On November 21, 2017, the CCP entered a default judgment in favor of Menges and against Ms. Collins. Partition Action Doc. No. 11535555.

On July 31, 2018, the CCP entered an Order for Partition of the Property ("Partition Order"). Partition Action Doc. No. 11892264. In the Partition Order, the CCP appointed Justin Highlands as the Master in Partition ("Master"). *Id.*; Case No. 19-14224-amc ECF 69 First Mot. Relief Stay Ex. C.

On April 5, 2019, Menges filed an emergency motion to compel access to the Property to facilitate a sale of the Property ("First Emergency Motion to Compel"). Partition Action Doc. No. 12253296. On April 12, 2019, the CCP issued an order directing Ms. Collins to make the Property available for real estate inspection upon three days' written notice. *Id.* at Doc. No. 12263795; Case No. 19-14224-amc ECF 69 First Mot. Relief Stay Ex. D. Shortly thereafter, on May 1, 2019, after Menges still found herself unable to access the Property, she filed a second emergency motion to compel access to the Property to facilitate a sale, for sanctions, and contempt ("Second Emergency Motion to Compel"). Partition Action Doc. No. 12288476. On May 5, 2019, Veronica Corropolese, a professional Licensed Realtor ("Realtor Appraiser") listed

the Property for a purchase price of $149,900 on the Bright Multiple Listing Service ("MLS"). Case No. 19-14224-amc ECF 264 Ex. 1. The listing included the following written remarks:

> Agent: Tax Liens and HOA back dues apply. Cash only offers with proof off [*sic*] funds to accompany all offers; no access for inspections/appraisal. This is 'not' a tenant. Court Ordered Special Master is appointed to sell the property. Call Agent for further info. Offers must include proof of funds and certified funds.
>
> Public: INVESTOR ALERT: Sale is 'sight unseen' with a possible eviction cash only; there is 'no' access to the property or showings prior to the sale. Please do 'not' visit the property or access the yard or it may be considered trespassing. *Id.*

The Realtor Appraiser engaged by the Master subsequently conducted an appraisal of the Property ("Partition Action Appraisal"). Case No. 19-14224-amc ECF 193. The Realtor Appraiser noted in her appraisal that:

> In the past 300 days, five dwelling units in the Roboda Development, which are of approximately equal size to 18 Roboda Blvd., sold for an average of $210,000. I was asked if cleaning the property and spending $5,000 on it now might increase its value. Cleaning it up and spending $5,000 would not put a dent into what the property needs in order to list it to get a reasonable offer. If a speculator or investor were to review the property with an assurance that the residents would vacate prior to closing, my estimate is that its present value is still between $140,000 to $150,000. An expenditure of $15,000 to $20,000 now "might" increase its value to $170,000. The property is in poor condition. Trash has accumulated in the rear yard. The property appeared very worn and carpets are in extremely poor condition due to cigarette smoking in the home. New paint is required on every wall, trim, and ceilings after being effectively cleaned, as well as one to two coats of Kilns primer applied prior to paint. *Id.*

On May 15, 2019, the CCP issued an order stating:

> Defendant [Ms. Collins] shall make the Subject Property available for inspection by prospective buyers and realtors as previously Ordered by this Court on April 12, 2019, and she and her family shall vacate the Subject Property at the time of closing. If the Defendant [Ms. Collins] fails to cooperate by making the Subject Property available and in fully cooperating with the sale, she shall receive no proceeds from the sale of the Subject Property, when it is ultimately completed. If Defendant [Ms. Collins] refuses to vacate the Subject Property at or before closing, she may be found in Contempt of Court, after hearing. *Id.* at ECF 69 First Mot. Relief Stay Ex. E.

Between May 16, 2019 and May 28, 2019, three offers significantly below the listing price were made on the Property but ultimately were not consummated due to uncertainty regarding the Master's ability to deliver a vacant premises. *Id.* ¶ 24; ECF 152 Second Mot. Relief

Stay ¶ 24; *see* Partition Action Doc. No. 12370700. On June 6, 2019, the CCP issued an order holding Ms. Collins in contempt for failing to answer the Second Emergency Motion to Compel and failing to appear after receiving notice, on May 2, 2019, of the hearing on the Second Emergency Motion to Compel, which took place on May 15, 2019. Partition Action Doc. No. 12340197.

On June 24, 2019, Menges made an offer to purchase Ms. Collins' one-half interest in the Property for $30,000. *Id.* at Doc. No. 12370700; Case No. 19-14224-amc ECF 152 Second Mot. Relief Stay ¶ 21; Case No. 19-14224-amc ECF 69 First Mot. Relief Stay ¶ 21, Ex. G. On July 1, 2019, the Master filed a report with the CCP seeking approval of the sale of Ms. Collins' one-half interest in the Property to Menges. Partition Action Doc. No. 12370700.

**C. Bankruptcy Filing**

On July 2, 2019, Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Case No. 19-14224-amc ECF 1. On July 16, 2019, the CCP issued an order granting the Master's Petition and authorizing the completion of the sale. Partition Action Doc. No. 12388888. On July 17, 2019, upon being notified by Ms. Collins' attorney of the pending bankruptcy, the CCP vacated the order and stayed the matter pending resolution of the bankruptcy. *Id.* at Doc. No. 12389189; Case No. 19-14224-amc ECF 69 First Mot. Relief Stay Ex. I.

On September 23, 2019, Debtors filed their schedules and statement of financial affairs. Case No. 19-14224-amc ECF 34, 38, 39, 40, 41, 42, 43. Schedule D sets forth the secured claims on the Property totaling $119,105.50—including Menges' $50,000 judgment lien. Case No. 19-14224-amc ECF 40 Debtors' Sch. D, 1-3. On October 17, 2019, Menges filed a motion for relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1)-(2) of the United States Bankruptcy

Code ("First Motion for Relief From Stay"). Case No. 19-14224-amc ECF 69 First Mot. Relief Stay. In the First Motion for Relief From Stay, Menges averred that her interest in the Property lacked adequate protection because "she is not being paid rent by Debtor Deborah Marie Collins, Debtors are not paying homeowners' association charges, Debtors are not paying taxes, and Menges has no way of ensuring that the [s]ubject Property is adequately being maintained." *Id.* ¶ 31. Menges stated that the Property's current assessed value was $97,570 but also noted that Zordan had purchased the Property in 2016 for $184,000. *Id.* ¶ 6.

On October 30, 2019, Debtors filed a notice to convert the case from Chapter 7 to Chapter 13 of the Bankruptcy Code. Case No. 19-14224-amc ECF 81. On the same day, the Court issued an order converting the case to Chapter 13 of the Bankruptcy Code. *Id.* at ECF 84. On December 16, 2019, Debtors filed a response to the First Motion for Relief From Stay. *Id.* at ECF 122. In the response, the Debtors alleged that Menges had previously agreed that she would not ask for rent from Debtors provided Debtors were responsible for the obligations on the home. *Id.* ¶¶ 3, 9. Further, Debtors contended that Menges' judgment lien on the Property is adequately protected in that it will be fully satisfied by the conclusion of the Debtors' proposed plan ("Plan"). *Id.* ¶ 10; *see also* ECF 178 Chapter 13 Plan §§ 4(c)&(d). Moreover, with respect to the homeowners' association ("HOA") charges and taxes, the Debtors suggested in a supplemental opposition to the First Motion for Relief From Stay that Menges' interest in the Property is adequately protected because the HOA has not filed a proof of claim in their bankruptcy case and they "fully intend to pay the full amount of outstanding taxes through the funding of their Plan, and will keep accruing taxes paid outside of their plan." Case No. 19-14224-amc ECF 194, Supp. Opp. First Mot. Relief Stay 5, 6.

On January 14, 2020, a hearing was held on the First Motion for Relief From Stay, and the parties agreed to participate in mediation. Case No. 19-14224-amc ECF 150. On January 15, 2020, the Court entered an order approving a stipulation to submit to mediation filed by Debtors. *Id.* at ECF 146. However, on January 20, 2020, Menges filed a second motion for relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1)-(2) of the United States Bankruptcy Code ("Second Motion for Relief From Stay," collectively with "First Motion for Relief From Stay," "Motions for Relief From Stay") identical to the First Motion for Relief From Stay. *Id.* at ECF 152 Second Mot. Relief Stay. On February 5, 2020, Ms. Collins filed a response to the Second Motion for Relief From Stay, disputing the Property's purported $97,570 assessed value; denying Menges' entitlement to any rent; and asserting that "Menges has not contributed any material amount of money toward the premises while Debtors have made the HOA payments, tax payments, and are attempting to bring all obligations against the residence current through the instant bankruptcy proceedings." Case No. 19-14224-amc ECF 166 Ans. Second Mot. Relief Stay ¶¶ 6, 10.

On April 23, 2020, Menges filed a memorandum regarding the Second Motion for Relief From Stay, alleging that the unpaid real estate taxes on the Property were over $20,936.52, and the HOA was owed more than $7,675. Case No. 19-14224-amc ECF 180 Menges Memo. Second Mot. Relief Stay Ex. 10, 11.

On July 30, 2020, the Debtors submitted a second amended Schedule C which attempts to claim an exemption in the Property for both Debtors totaling $50,300 based upon Debtors' belief that they can force Menges to transfer her one-half interest in the Property to Mr. Collins. Case No. 19-14224-amc ECF 204 Debtors' Second Am. Sch. C. The second amended Schedule C also attached four comparables to the Property featuring a low sale price of $62,000, a median sale

price of $167,525, an average sale price of $147,988, and a high sale price of $194,900. *Id.* at Ex. A. The comparable properties provided by the Debtors were not directly part of the Roboda Development and most were almost a mile away from the Property. *Id.* On August 6, 2020, Menges filed a motion for an expedited hearing and order compelling reasonable access to the Property for appraisal purposes ("First Motion to Compel Access"), arguing that because the Realtor Appraiser was not a certified appraiser, Menges needed a certified appraiser to conduct an inspection for an accurate evaluation. Case No. 19-14224-amc ECF 209 First Mot. Compel.

On December 8, 2020, Menges filed a second motion for an expedited hearing and order compelling reasonable access to the Property for appraisal purposes ("Second Motion to Compel Access") wherein she claimed that she had always believed the Property's true value was in excess of $200,000.[1] *Id.* at ECF 242 Second Mot. Compel 2. In support of the new purported value, Menges submitted various comparable sales in the Roboda Development ranging from $180,000 to $250,000. *Id.* at ECF 223 Ex. A. The comparable properties have similar square footage, number of rooms, and number of baths. *Id.* On December 16, 2020, Debtors filed a response to the Second Motion to Compel Access denying that Menges had always believed the Property's true value was in excess of $200,000 and asserting that, in the Partition Action and the Second Motion for Relief From Stay, Menges had alleged that the Property's value was much less than $200,000. *Id.* at ECF 247 Resp. Second Mot. Compel 2. Specifically, Debtors maintain that in connection with the Partition Action, Menges asserted that the Property was subject to destruction by the Debtors, and Menges arranged to purchase the Property at the drastically reduced value of $30,000 immediately prior to the petition date. *Id.* at 2-3.

[1] Menges further alleged in the Second Motion to Compel Access that the lower purchase price of $30,000 recommended by the Master in the Partition Action was a reflection of Ms. Collins' "obstructive behavior." *Id.* at 2.

On March 17, 2021, the Court held a hearing to determine the value of the Property in connection with the Second Motion for Relief From Stay ("Valuation Hearing"). Case No. 19-14224-amc ECF 268. Richard A. Zuber ("Zuber"), whom Menges had retained to conduct updated appraisals of the Property, testified that he has been a certified appraiser for 44 years, holds an appraiser license in the commonwealth of Pennsylvania, oversees ten employees and thirty (30) independent contractors, has performed approximately 6,000 residential appraisals, has been qualified to testify as an expert in the courts of Pennsylvania on other occasions, and is familiar with the Roboda Development, having sold and appraised other homes located there. Case No. 19-14224-amc ECF 282 Hrg. Tr. 27:18-28:13, 57:10-14, March 17, 2021 (hereinafter referred to as "Hrg. Tr.").

In connection with the Valuation Hearing, Menges submitted two appraisals made by Zuber: one dated July 2, 2019, valuing the Property at $205,000 ("First Appraisal Report") and one dated January 20, 2021, valuing the Property at $220,000 ("Second Appraisal Report," collectively with First Appraisal Report, "Zuber's Appraisals").[2] Case No. 19-14224-amc ECF 255 Ex. A; ECF 263 Ex. 1; Hr. Tr. 3:20-4:1. In the First Appraisal Report, Zuber identified eight comparable sales in the Roboda Development which he used to inform his valuation of the Property. Case No. 19-14224-amc ECF 255 Ex. A. The Second Appraisal Report identified seven comparable sales which he used to inform his valuation of the Property. Case No. 19-14224-amc ECF 255 Ex. A; ECF 263 Ex. 1; ECF 269 Supp. Br. re Valuation Hrg. 2. In both appraisals, Zuber relied on comparable sales of units in the 206-unit complex, in the same development, on the same street, and with similar shapes and sizes due to the nature of the Roboda Development. Hrg. Tr. 38:23-39:10.

---

[2] To determine the value of the Property, Zuber testified that he took into consideration the Roboda Development sales that occurred six months to a year before his appraisal. Hrg. Tr. 58:5-9.

Zuber also relied on the Montgomery County Board of Assessment website, which identified and confirmed sixty-one (61) Roboda Development sales from September 16, 2016 through December 17, 2020. Case No. 19-14224-amc ECF 263 Ex. 3. He testified that, after removing the family sales, the average sale price for the remaining fifty-three (53) transactions[3] was approximately $210,000. Hrg. Tr. 67:23-68:1; Case No. 19-14224-amc ECF 263 Ex. 3.

In addition to comparing the Property to other sales in the Roboda Development, Zuber also based his two appraisal reports on photographs of the Property taken by the Debtors using the application Property Assist.[4] Case No. 19-14224-amc ECF 263 Ex. 1; Hrg. Tr. 49:10-19. The photographs showed: (1) a view of the Property's exterior from the front, rear, and street; (2) two angles of the family room; (3) the dining room; (4) two angles of the kitchen; (5) the three bedrooms; (6) two angles of the full bathroom; (7) the half bathroom; (8) the basement; and (9) parking for the Property. Case No. 19-14224-amc ECF 263 Ex. 1.

In addition, Zuber relied upon exterior photographs that he had taken of the Property on October 8, 2020, showing the front of the Property, rear of the Property, and parking lot for the Property. *Id.* Finally, when conducting the two appraisals, Zuber also reviewed photographs from MLS posting #1003479341 when the Property had been sold to Zordan and Ms. Collins on September 23, 2016. *Id.* These photographs featured (1) the family room; (2) two angles of the dining room; (3) two angles of the first bedroom; (4) the second and third bedroom; and (5) two angles of the partially finished basement. *Id.*

[3] Although at the Valuation Hearing, Zuber agreed that "the average of *58* of these sales [is] approximately or in excess of $210,000," in fact, after removing the family sales, 53 property transactions remain. Hrg. Tr. 67:23-68:1 (emphasis added).

[4] At the Court's request, the parties agreed to use Property Assist in order to accommodate Ms. Collins' health concerns about allowing a third party to enter the Property given the ongoing pandemic. Property Assist allows a property owner to photograph their property. Case No. 19-14224-amc ECF 242 Ex. C ¶ 5. The application delivers the photographs to the appraiser, who is then able to verify the photographs because of a GPS contact system confirming the location of the photographs, including the time and date that they were taken. *Id.*

Zuber testified that he made adjustments to the sale price of the comparable properties in comparison to the Property based on their condition. Hrg. Tr. 56:1-2. Because he determined the Property to be in average condition, he made an adjustment of "negative $10,000" to comparable properties he considered to be in "average-plus" condition; "negative $15,000" to comparable properties in "good condition;" and "positive $10,000" to properties he considered in "average-minus condition." Hrg. Tr. 55:3-10.

Zuber opined that the Property was in "good" condition when Zordan and Ms. Collins initially acquired it. *Id.* at 52:23-53:4. The Court also observed from the pictures that, although the Property's condition appeared better in 2016, the current condition of the Property was still good. *Id.* at 54:1-12.

According to the First Appraisal Report, the Property, which has a gross living area of 1,400 square feet, was forty-seven years old and in average condition at the time the appraisal was conducted. Case No. 19-14224-amc ECF 263 Ex. 1. Zuber used the following eight properties, all located in the Roboda Development and which he determined to be similar to the Property, for his comparison ("Menges' First Comparables") to determine the Property's value: (1) 94 Roboda Blvd., Royersford, Pennsylvania, which sold for $235,000 on June 17, 2019, is located 0.17 miles from the Property, was forty-five (45) years old, and was in "average" condition; (2) 97 Roboda Blvd., Royersford, Pennsylvania, which sold for $214,000 on January 25, 2019, is located 0.17 miles from the Property, was forty-four (44) years old, and was in "good" condition; (3) 126 Roboda Blvd., Royersford, Pennsylvania, which sold for $197,000 on December 27, 2018, is located 0.18 miles from the Property, was forty-five (45) years old, and was in "average-plus" condition; (4) 113 Roboda Blvd., Royersford, Pennsylvania, which sold for $219,000 on December 5, 2018, is located 0.23 miles from the Property, was forty-five (45)

years old, and was in "average-plus" condition; (5) 194 Roboda Blvd., Royersford, Pennsylvania, which sold for $233,750 on November 8, 2018, is located 0.12 miles from the Property, was forty-two (42) years old, and was in "good" condition; (6) 122 Roboda Blvd., Royersford, Pennsylvania, which sold for $215,000 on September 27, 2018, is located 0.20 miles from the Property, was forty-five (45) years old, and was in "average-plus" condition; (7) 22 Roboda Blvd., Royersford, Pennsylvania, which sold for $205,000 on September 20, 2018, is located 0.02 miles from the Property, was forty-seven (47) years old, and was in "average" condition; and (8) 12 Roboda Blvd., Royersford, Pennsylvania, which sold for $180,000 on August 10, 2018, is located 0.03 miles from the Property, was forty-five (45) years old, and was in "average-minus" condition.[5] Case No. 19-14224-amc ECF 263 Ex. 1.

The Second Appraisal Report compares the Property to more recent sales of the following seven properties, all located in the Roboda Development, and which Zuber determined were similar to the Property ("Menges' Second Comparables") to determine the Property's value: (1) 202 Roboda Blvd., Royersford, Pennsylvania, which sold for $245,000 on January 8, 2021, is located 0.13 miles from the Property, was forty-five (45) years old, and was in "good" condition; (2) 36 Roboda Blvd., Royersford, Pennsylvania, which sold for $227,000 on November 12, 2020, is located 0.09 miles from the Property, was forty-eight (48) years old, and in "average-plus" condition; (3) 78 Roboda Blvd., Royersford, Pennsylvania, which sold for $207,000 on October 28, 2020, is located 0.17 miles from the Property, was forty-eight (48) years old, and in "average-minus" condition; (4) 134 Roboda Blvd., Royersford, Pennsylvania, which sold for $204,000 on July 16, 2020, is located 0.08 miles from the Property, was forty-seven (47) years old, and in "average-minus" condition; (5) 3 Roboda Blvd., Royersford,

[5] The Property and all of Menges' First Comparables have a gross living area of 1,400 square feet, three bedrooms, one full bathroom, and one half bathroom. Case No. 19-14224-amc ECF 263 Ex. 1.

Pennsylvania, which sold for $230,000 on July 15, 2020, is located 0.06 miles from the Property, was forty-nine (49) years old, and in "average" condition; (6) 37 Roboda Blvd., Royersford, Pennsylvania, which sold for $240,000 on May 29, 2020, is located 0.09 miles from the Property, was forty-nine (49) years old, and in "good" condition; and (7) 82 Roboda Blvd., Royersford, Pennsylvania, which sold for $225,000 on March 19, 2020, is located 0.17 miles from the Property, was forty-eight (48) years old, and in "average-plus" condition.[6] *Id.*

Ms. Collins testified on her own behalf regarding the Property's condition, identifying defects that she has observed while residing in the Property. First, she stated that some masonry work was needed for the walkway. Hrg. Tr. 138:17-22. Additionally, Ms. Collins explained:

> I believe the home is still overall in -- in good condition. It -- it had some cracked masonry work that needed addressing that we never had addressed. The home was furnished with white carpeting; and, after five years, that white carpeting is -- you know, it's pretty unforgiving. The appliances and the utilities were provided -- were there when we moved into the home, and they were not terribly old, but dated. Some had warranties; others did not. The home appeared to be in, if not the original condition, then certainly not in a condition that had been modern -- modernized. So the kitchen counters were this -- they have -- it's this kind of linoleum, kind of sticky tops, and that's starting to peel. The hardwood is actually just laminate throughout the home; there's no hardwood in -- in any -- in any part of the home. Over time, that laminate chips and begins to pull up. Long terms [*sic*], it will likely need repairing and/or replacing. The master bathroom is quite dated with his and her sinks and not conducive space-wise for certainly anyone with a handicap, but even anyone that's of any size would find it very difficult. But that's more of a cosmetic issue than an actual repair. But the -- one of the up -- so the overall condition of the appliances and the utilities, which were all there when we moved there, have aged . . . *Id.* at 140:13-141:15.

Furthermore, Ms. Collins shared that the wood inside the Property was cracking, and areas of the ceiling were beginning to crack. *Id.* at 142:6-12. Ms. Collins also stated that "[i]n the basement, [Debtors] had to install a dehumidifier because of moisture in the attic, extra insulation was needed" and that the cutoff valve for the basement water is corroded, making it difficult to turn,

---

[6] The Property and all Menges' Second Comparables have a gross living area of 1,400 square feet, three bedrooms, one full bathroom, and one half bathroom. Case No. 19-14224-amc ECF 263 Ex. 1.

forcing the Debtors to keep it off until it can be repaired. *Id.* at 144:6-8, 150:10-18. Ms. Collins further testified that the Property's water heater sometimes malfunctions. *Id.* at 146:12-18.

During their time residing in the Property, the Debtors had only replaced the garbage disposal and dishwasher. *Id.* at 151:4-19. As such, the condensation in the basement and the attic, the corroded pipes in the plumbing, and the ventilation issues have not been addressed. *Id.* Ms. Collins stated that she frequently reviews MLS listings and the Roboda Development newsletter and has "not seen a unit that is a non-end unit that has what appears to be original parts to the home, no hardwood floors, white carpeting that needs replacing, no modernization, no upgrades, older utilities, older appliances." *Id.* at 153:5-17. However, ultimately, Ms. Collins did not feel that she could estimate the Property's value because she did not have the requisite information to determine the value of the Property. *Id.* at 163:9-164:12.

At the request of the parties at the conclusion of the hearing, the Court set a timeline for filing further briefing. Case No. 19-14224-amc ECF 268. On March 26, 2021, Menges filed a supplemental memorandum regarding the valuation ("Menges Post-trial Brief"). *Id.* at ECF 269 Menges' Supp. Br. In the memorandum, Menges argues that she presented a complete and competent expert valuation performed by Zuber. *Id.* at 1. Ultimately, Menges requests that the value of the Property be set at $220,000. *Id.* at 9.

On April 13, 2021, Debtors filed a reply brief ("Debtors' Post-trial Reply Brief") to the Menges Post-trial Brief. Case No. 19-14224-amc ECF 273 Debtors' Reply Br. to Menges' Supp. Br. Debtors' Post-trial Reply Brief characterizes Zuber's valuations as overly optimistic given his acknowledgement that he did not know the degree to which the similar properties varied by way of initial upgrades and improvements. *Id.* at 8. Ultimately, Debtors, who seek to have Mr. Collins obtain financing in order to force a sale of Menges' interest in the Property to him,

request that the Court value the Property at $140,000 to $150,000 as of the petition date and $170,000 to $180,000 as of the hearing date. *Id.* at 12. On April 19, 2021, Menges filed a supplemental memorandum on the Property's valuation ("Menges Supplementary Memo") which focused on Debtors' failure to provide any competent evidence of the value of the Property and challenged Debtors' ability to force a sale of Menges' interest in the Property through a chapter 13 plan. Case No. 19-14224-amc ECF 276 Menges Supp. Memo.

**III. DISCUSSION**

Based upon Zuber's Appraisals, pictures of the Property, and the testimony of Zuber and Ms. Collins, it is clear that the Property is in good condition, albeit with some deficiencies highlighted by Ms. Collins. Ultimately, the Court finds Zuber's appraisal of $220,000,[7]

---

[7] Debtors contend that Menges should be bound by the Partition Action listing price of $149,900 and the Realtor Appraiser's opinion that the Property was worth $150,000. Case No. 19-14224-amc ECF 273 Debtors' Reply Br. to Menges' Supp. Br. 4-5. Debtors further argue that Menges could not have believed that the Property was "always worth over $200,000," while also attempting to acquire Ms. Collins' interest in the Property for only $30,000 during the Partition Action. *Id.* at 5. Based on the foregoing, Debtors appear to assert the doctrine of judicial estoppel, which provides that when "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968, 977 (2001) (citing *Davis v. Wakelee,* 156 U.S. 680, 15 S. Ct. 555, 558, 39 L. Ed. 578 (1895)). This equitable doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine,* 532 U.S. at 749, 121 S. Ct. 1808 at 1814, (citing *Pegram v. Herdrich,* 530 U.S. 211, 227 n.8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000)). Judicial estoppel is an "extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 424 (3d Cir. 1988). Some aggravating factor, and not mere inconsistency, is necessary for the application of judicial estoppel. *Chao v. Roy's Const., Inc.,* 517 F.3d 180, 186 n.5 (3d Cir. 2008). The Supreme Court has identified several factors to consider when determining whether to apply judicial estoppel, including whether a party adopted inconsistent positions, whether the party succeeded in persuading a court to accept that party's earlier position, and whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine,* 532 U.S. at 750–51, 121 S. Ct. 1808 at 1814-1815.

The Third Circuit Court of Appeals ("Third Circuit") requires three elements to be met before a court may apply judicial estoppel:

> (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, *i.e.*, in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity. *Montrose Med. Grp. Participating Sav. Plan v. Bulger,* 243 F.3d 773, 777–78 (2001).

The *Montrose* court, guided by *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), held "that a party has not displayed bad faith for judicial estoppel purposes if the initial claim was never accepted or adopted by a court or agency." *Id.* at 778. The doctrine of judicial estoppel is to be applied sparingly and

supported by numerous comparables, compelling. However, because Zuber did not consider the minor deficiencies identified by Ms. Collins and the lack of renovations to the Property, the Court will make a downward adjustment of Zuber's estimate by $15,000, which sets the current fair market value of the Property at $205,000. [8]

The Court finds that both Zuber and Ms. Collins were credible witnesses and will weigh their testimony accordingly. As mentioned *supra,* Zuber is a qualified appraiser with forty-four (44) years of experience who has performed approximately 6,000 residential appraisals. Hrg. Tr. 27:18-28:13. He has sold and appraised houses in the Roboda Development, making his appraisal, *a fortiori*, useful. *Id.* at 57:10-14. His First Appraisal Report containing eight comparables and Second Appraisal Report containing seven comparables provided the Court with ample opportunity to compare the Property to other similar properties in the Roboda Development. Case No. 19-14224-amc ECF 255 Ex. A; ECF 263 Ex. 1; ECF 269, Menges Supp. Br. re Valuation Hrg. 2. In selecting those comparables, Zuber had fifty-three (53) sales in the Roboda Development to choose from since 2016, and he selected those comparables which were sold within six months to a year from each appraisal he conducted. Hrg. Tr. 58:5-9, 67:23-68:1.

---

reserved for the most egregious case. *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. GMC,* 337 F.3d 314, 324 (3d Cir. 2003). In addition, the Third Circuit has held that "judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *G–I Holdings, Inc. v. Reliance Ins. Co.,* 586 F.3d 247, 262 (3d Cir. 2009).

Here, there is no evidence before the Court of Menges' position in the Partition Action; therefore, judicial estoppel will not apply. The Realtor Appraiser in the Partition Action, who set the value of the Property at $149,900, was retained by the Master, not Menges, and was not even a certified appraiser. Case No. 19-14224-amc ECF 264 Ex. 1; ECF 209 First Mot. Compel. And although Menges submitted a bid of $30,000 for the Property, she only did so after other higher offers fell through because the Master could not assure the prospective buyers that the Debtor would timely vacate the Property. Case No. 19-14224-amc ECF 69 First Mot. Relief Stay ¶ 24; ECF 152 Second Mot. Relief Stay ¶ 24; Partition Action Doc. No. 12370700. In addition, the language of the listing on MLS would have discouraged most prospective buyers because it contained exceedingly discouraging remarks such as "cash only offers," "no access for inspections/appraisal," "[s]ale is 'sight unseen,'" and most glaringly: "[p]lease do 'not' visit the property or access the yard or it may be considered *trespassing*." Case No. 19-14224-amc ECF 264 Ex. 1 (emphasis added). The Court, therefore, will give no weight to the $149,900 listing price and Menges will not be barred from asserting the $205,000 and $220,000 values in the Zuber Appraisals.

[8] No party has suggested that any material changes occurred between the date the Second Appraisal Report was conducted and the present.

Furthermore, the chosen comparables, all similar in age to the Property,[9] were on the same street as the Property and had similar shapes and sizes to the Property due to the nature of the Roboda Development, further buttressing the value offered by Zuber. *Id.* at 38:23-39:9, 42:19-43:2, 44:16-45:14. In fact, all of the comparables provided by Zuber have the same gross living area of 1,400 square feet, three bedrooms, one full bathroom, and one half bathroom. Case No. 19-14224-amc ECF 263 Ex. 1. Based on the foregoing, the Court finds Zuber's testimony and appraisal both credible and extremely helpful in determining the Property's value. However, the Court also found Ms. Collins' testimony about the Property's deficiencies credible.

The photographs that were taken by the Debtors, as well as Ms. Collins' testimony, confirmed that the Property is overall in good condition. However, Ms. Collins testified that no major improvements have been made to the Property since Zordan purchased the Property in 2016. Hrg. Tr.151:4-19, 153:5-17; Case No. 19-14224-amc ECF 263 Ex. 1. Therefore, the Court agrees with Ms. Collins that the Property's condition seems to have slightly diminished in appearance since 2016. *See* Hrg. Tr. 140:13-141:15. As Ms. Collins indicated, the white carpeting has become discolored since 2016, which lowers the value of the Property unless it is replaced. *Id.* Moreover, Ms. Collins credibly testified that the hardwood in the Property is laminate, which would lower the value of the Property compared to the Roboda Development's other properties that Ms. Collins frequently studied in the Roboda newsletter. *Id.* at 153:5-17.

Most notably, the Court is concerned about the cracks in the ceiling of the Property, which further lower the value of the Property unless remedied. *Id.* at 142:6-12. Moreover, a buyer would expect the value of the Property to be lower due to the moisture in the attic, the corroded pipes in the plumbing, and the malfunctioning water heater. *See id.* at 144:6-8; 146:14-

---

[9] The highest deviation was only five years—from forty-four (44) years to forty-nine (49) years old.

18. However, Ms. Collins ultimately admitted that she could not opine on the value of the Property and the Court commends Ms. Collins on her honesty.

The Court, therefore, starts with the value of $220,000 in the Second Appraisal Report which was supported by the credible testimony of Zuber and numerous comparables in the same development as the Property and then makes a downward adjustment of $15,000 to account for the deficiencies in the Property that Ms. Collins observed while living at the Property.[10] The Court concludes, therefore, that the fair market value of the Property is $205,000.

**IV. CONCLUSION**

Based upon the Second Appraisal Report and the testimony of Zuber and Ms. Collins, the Court concludes that the current fair market value of the Property is $205,000.

Date: July 14, 2021

Honorable Ashely M. Chan
United States Bankruptcy Judge

[10] Here, the valuation of the Property is conducted in the context of Menges' motions for relief from the automatic stay. "The classic test for determining equity under section 362(d)(2) focuses on a comparison between the total liens against the property and the property's *current* value." *In re Indian Palms Assocs., Ltd.,* 61 F.3d 197, 206 (3d Cir. 1995) (emphasis added). Accordingly, the Court will start with the value set forth in the Second Appraisal Report which was performed closer to the evidentiary hearing on the motion for relief and, therefore, represents the current fair market value of the Property.